Good morning. If it pleases the court, this is Gerald North. I'm appearing as a member of the court's bar and on behalf of myself in my former capacity as a debtor in possession in the underlying bankruptcy case. If I may, the singular issue for the court is whether the property in question was or was not property of the bankruptcy estate and therefore protected by the automatic stay from the actions taken by Bullhead City. Section 541 of the Bankruptcy Code defines what property of the estate is. In subsection A1, it provides that it includes all legal or equitable interests of the debtor in property. And in subsection A7, it provides that it includes any interest in property that the estate may subsequently acquire after commencement of the case. This property in question was originally held by an Arizona corporation that was dissolved in 1993. Was it ever revived? No, it was never revived. Under the common law of the state of Arizona at the time of the dissolution, on dissolution, the legal title to property of a corporation passed to its shareholders, which would include the debtor in possession here. That did not change until 1994 by statute, and all parties agree that the later statute does not apply here. There is a complicated analysis that the bankruptcy court made of the statutory schemes that had been used to try to ignore the clear common law of the state of Arizona. But irrespective of whether that analysis is right or not, clearly the interests in the property were of an equitable nature. By the time the corporation had dissolved, the corporation had no legal existence except for the The Arizona statute has this provision in it that the corporation stays alive to sue and be sued. Yes, winding up powers. And its creditors can get the corporation's property from a successful suit against the corporation, even though the corporation has been dissolved. I'm not quite clear on the corporate retention of title, whether it's legal title, legal and equitable title, legal title subject to a duty to the shareholders. I don't know quite what the shareholders own. Could you clear that up? Well, I think it depends on what we're talking about. In 1993, when this dissolution occurred, legal title would have transferred upon an involuntary dissolution to the shareholders, but it was subject to any remaining corporate debt. So a creditor could bring an action against the corporation, join the shareholders, and successfully impose a lien or otherwise collect against the property. But title had automatically transferred as of a year later, the subsequent statutory change. That was no longer the case. Counsel, what cases are you relying on to support your proposition that title passed to the shareholders immediately upon the dissolution? There's one summary case, if I may, and it is the case that all parties refer to, Thomas v. Harper. It is a per curiam type opinion, but it relies on what was then standard black letter law, common law references, and that was the rule that prevailed in most states throughout the United States. Was the Thomas case one that has the precedential consequences, or was it just an unpublished opinion? No, it's a published opinion. It appears at 481 P. 2nd, 510. It's an Arizona appellate decision in 1971. Now, if I can go on, the bankruptcy court recognized that even under the analysis of Thomas, that the shareholders would be the ultimate or eventual owners of the property in question, and that should have been enough for the bankruptcy court to recognize that at that point, equitable ownership of the asset, if not legal ownership, had passed to the individual shareholders. Apart from the bankruptcy court's error in ruling that the property in question was not property of the bankruptcy estate, the bankruptcy court also dismissed claims by the corporation itself and by its shareholders on behalf of the corporation purportedly on the basis of related to jurisdiction, but it never ruled that it did not have related to jurisdiction, and in fact it did. There's one glaring factual misstatement in my opponent's submission. There's a claim that the Chapter 11 plan is fully consummated. It is not fully consummated. I believe there's a remaining, oh, some $1.5 million of payments to be made. Let's see. When North filed his personal bankruptcy in 2003, that was after the dissolution, right? No, Your Honor. Actually, there were four bankruptcy filings. They were all part of a 10-year-long marital battle. The first was filed by Mrs. North in 1988, continued until 2002. Well, the dissolution was 1993? I'm sorry. I didn't hear. Was the corporate dissolution before all three bankruptcies? It was before all four bankruptcies, yes. All four personal Gerald North bankruptcies. Yes. There was a 1998 bankruptcy, two in 2000, and one in 2003. I didn't ask for all that detail. I just asked a before and after question so I wouldn't get lost in the detail. Was the corporate dissolution before all of Gerald North's personal bankruptcies? Yes, it was, by seven years. Now, when Gerald North declared his personal bankruptcies, I suppose he must have listed the 206 acres of land in his bankruptcy as an asset so that the creditors would have gotten it, unless they all got paid off out of other assets. Is that what happened? It was listed in the list of assets in the underlying bankruptcy case, and I think that's acknowledged by all parties. But the creditors were paid off out of other assets, so he still owned the land when Bullhead City did its quiet title action? No, Your Honor, that's more complicated. The quiet title action was an unnoticed action long after Bullhead City knew of the existence of the bankruptcy case and knew how to contact the debtor in possession, and they went to a former officer and a former attorney and got them to stipulate to a quiet title judgment. These are people who had not been involved in the corporation for some 15 years. So the quiet title action, which took place after the 2003 bankruptcy, stands on a wholly different footing and is the subject of related litigation. And if I may reserve the rest of my time? You may. Thank you. Good morning, Your Honors. May it please the Court. Dwayne Fox, appearing for the City of Bullhead City. I'd like to start, Your Honors, by addressing the Thomas v. Harper case that Mr. North relies on. As we pointed out in the brief, Your Honor, that case does not support the appellant's arguments here for a number of reasons. Could you talk a little louder? I'm having trouble hearing you. Sure. I'm sorry, Your Honors. The Thomas v. Harper case does not support the appellant's arguments in this case, primarily, first of all, because the statute that was in effect that was being applied in the Thomas case was former ARS Section 10-365. That statute was repealed some 17 years before the dissolution of this corporation in 1993. So for that reason alone, the Thomas case does not support the appellant's arguments. I would also point out, as pointed out in our brief, that the same court of appeals that decided the Thomas case subsequently decided the United Bank case and the Goldfield Mines case, which hold that the 1976 amendments to the statute broadened what a dissolved corporation could do. The Thomas case also is factually distinguishable. In that case, the court pointed out and limited its holding to a situation where the dissolved corporation had no creditors. In this case, we know from the first amended complaint that's at issue here that there was at least one creditor of the corporation, and that was the city of Bullhead City. In addition, the Thomas case was addressing the issue of personal property, not the issue of real property, which under Arizona law, as pointed out in the brief, has to be conveyed by a written deed, not by operation of law. The statutes that were in effect at the time of the 1993 dissolution make it clear that a dissolution is different than a liquidation of the corporation's assets. What you need is for the Bullhead City's notice was only to the corporation and not to North personally, right? That is correct, Your Honor. So what you need to get around the Supreme Court decision in Jones and general due process requirements is for the corporation still to own the asset, right? Yes, Your Honor. Now, as I understand Goldfield, the corporation retains legal title and may still hold and dispose of its property, collect its assets, and discharge its obligations, but only for the purpose of closing its affairs. I was reading from 642 of the Goldfield case. It seems as though you need for the North Corporation to continue to hold the assets generally rather than just for purposes of closing its affairs. What am I missing there? Well, I think that what we need is that the dissolution not result in an automatic transfer of the property from the corporation to the shareholders. And under the Goldfield case and under the United Bank case, the Arizona Court of Appeals makes clear that under the statutory scheme. In fact, Goldfield right here, tell me what language to look at. I just read you language that had caught my eye. But you just tell me what else to look at in Goldfield. Well, I think the important part of Goldfield is that the what was at issue there was I don't have the case right here, the page number that I can point to. But the what was at issue was the effect of a post-dissolution corporate act in filing some Federal documents in order to preserve the mining claim. And what the Court ultimately held in Goldfield is that the post-dissolution act was valid, that it wasn't null and void. And the fact that there was property to be preserved tells us that on the dissolution of the corporation, there wasn't an automatic transfer of the corporation's property. Otherwise, there wouldn't be anything for the corporation to preserve. And that's the same thing in the United Bank case, where the Court said that it was okay for the corporation post-dissolution to execute a deed of trust on the corporate property. And there we're talking about real property. So we know that the ----  It looks as though the question there is whether Goldfield I Corporation's transfer of assets to Goldfield II Corporation is legitimate as against Hand, a shareholder. And Hand says, I had them automatically. And Goldfield says, we're winding up the affairs of the defunct corporation. And then the Court says that the corporation may dispose of its property only for the purpose of closing its affairs, which is what Goldfield I was doing in the transfer to Goldfield II. But I've read this pretty superficially, so educate me if I'm wrong. Well, the point that I'm drawing from Goldfield, Your Honor, is that conceitedly, that is a complex case, a very procedurally complex case. But one of the issues in that case was what was the effect of the post-dissolution filings with the Federal Government with respect to the mining claims. And that's the part that I'm focusing on there, is that the Court said, the Court of Appeals said that the post-dissolution filing was not null and void, as claimed by the shareholder in that case. And the reason I'm citing Goldfield, Your Honor, is because if the filing, the post-dissolution filing is effective to preserve the property of the corporation, then that must mean that the corporation still holds the property, that there's not an automatic conveyance of that property on the dissolution. The statute that's in effect, or that was in effect in 1993, has a separate liquidation procedure in the statutes that's an optional procedure. It's not a procedure that has to be followed. Alito, help me with something about the transaction in this case. Let's see. I guess North and Company, Inc. wasn't doing anything to wind up its affairs, so that's just out of the case. I do not know, based on the record here, this was on a motion to dismiss. Now, when Bullhead City acquired the assets for nonpayment, that was seven years after the dissolution? Yes. That would have been around April 17, 2000, Your Honor. And the quiet title, that was 11 years after? Yes. The quiet title action was filed May 21, 2004. Could Arizona, if a corporation went belly up, if it was dissolved 50 years ago, could a creditor who, for some reason or another, might not be barred by limitations, or I guess it's an affirmative defense, it doesn't matter if they are barred if it's not asserted, could a creditor sue the corporation, serve summons and complaint on whoever was named in the ancient corporate documents as the agent for service of process, and collect assets that the defunct corporation used to own 50 years later? Your Honor, I think putting aside the issue that it was a different statutory scheme at that point, so let's put that issue aside, and let's put aside the statute of limitations issues. I think that the dissolution does not automatically transfer the property. So under Your Honor's hypothetical, yes, I believe that that corporation would still own that property, and it would be subject to a creditor being able to proceed. Can you imagine what a terrible state the title companies would be in if that were true? Well, fortunately, Your Honor, the law is now been clarified, and the statute explicitly makes clear that the dissolution does not transfer property. And I think that was a fair defense. And the reason for it, of course, was the fact that title was up in the air. All title was up in the air if a corporation touched it. Is that correct? Well, we're talking here about real property, too, and so ---- I'm talking about real property. I thought, you know, record title. And because we're talking about real property and record title, I think that it's important that parties like Bullhead City be able to rely on the record title and be able to look and see that this property is titled held by a corporation and issue notice as appropriate to the corporation, not to individual shareholders. Okay. Pardon me? Was there any service given to anybody except for certified mail service on the registered agent for service of process of the defunct corporation? The ---- I believe the record is, Your Honor, that service was made on corporate attorneys for the corporation. Were they the record agent for service of process? And that's an issue that was raised in the ---- I asked if it was given to anyone else, and you said the attorneys. So I want to know, are they somebody other? Are they an else? Yes, I believe that they are somebody other than the registered statutory agent. That was an allegation in the complaint that ---- The attorneys for the corporation. Is that the attorneys for the corporation years ago, or were they doing something for the corporation at the time? They were the co-defendants in the adversary proceeding, Mr. Polisi and Mr. Kohner, I believe was the name. For what? Mr. Polisi and Mr. Kohner, who I believe that Mr. North takes issue with respect to whether they were authorized to accept service for the corporation. Usually for improved real estate, one of the things you do is drive over there and tack a notice on the door. Was that done? I don't know, Your Honor. That's not in the record on this case, because we assumed the facts as alleged in the First Amendment complaint to be true. This was on a motion to dismiss. The factual record in that regard was not developed. Thank you, counsel. Thank you. The court, the ---- we've strayed a little bit from the record of the appeal, but it's true that there are allegations in the complaint, and that includes the fact that there was no notice. The attorney who took service was never a registered agent for service of process, had not acted as an attorney for the corporation for 15 years, and ponied up an individual who had been fired as president of the company some 14 years earlier, who then purported to be still the president of this defunct corporation for purposes of stipulating to the quiet title judgment. That's, as I said earlier, the subject of a separate but related litigation against those individuals. I think the key thing is to go back to what the Thomas case actually held, which was, quote, a defunct corporation is a proper party under an old statute for winding up, but is not a necessary or indispensable party where there exists no debts on behalf, on the part of the corporation. This is because on dissolution, the legal title to the property of the corporation passes to the stockholders subject to payment of the debts of the corporation, unquote. In this case, the debts, the only debts that existed were debts that ran with the very property in question. Essentially, they were parkway assessments imposed upon the property when the city of Bullhead put in a parkway. Those were the only debts in question. They were liens upon the property, and so there was no independent creditor with an unsecured claim to assert against the property. And in those circumstances, Thomas is squarely on point. Thank you, counsel. Thank you. North versus Bullhead City is submitted.
judges: Fletcher B. , Kleinfeld, Duffy